## WILLIAM H. REED v. JOSIAH F. HORN.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF CARBON COUNTY.

Argued March 10, 1891—Decided October 5. 1891.
[To be reported.]

(a) Plaintiff brought assumpsit to recover back a certain sum paid by plaintiff to defendant, in consequence of an alleged mutual mistake in carrying into effect a written contract for the amicable partition of a tract of land held by them as tenants in common. Deeds had been exchanged, and possession taken by the parties accordingly:

1. The trial judge, satisfied as a chancellor with the sufficiency of the evidence, having submitted the case to the jury in a clear and comprehensive charge, accurately and adequately instructing as to the kind and degree of evidence required to establish the alleged mistake, as against the written contract, the judgment on the verdict for the plaintiff should not be reversed.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 103 January Term 1891, Sup. Ct.; court below, No. 37 April Term 1889, C. P.

On April 3, 1889, William H. Reed brought assumpsit against Josiah F. Horn, to recover the sum of $650, alleged to have been paid by the plaintiff to the defendant, through a mutual mistake, on the partition of a tract of land between them. Issue.

At the trial, on January 23, 1890, the plaintiff being called to testify in his own behalf, his counsel made the following offer:

Statement of Facts.

" We propose to prove by the witness on the stand that the plaintiff and the defendant owned as tenants in common, a farm in Packer township, Carbon county, Penna.

" That in the fall of 1883, they agreed by parol to make partition between them; and that in pursuance of said parol agreement they employed Francis Moyer, a surveyor, to run the lines, and that in making the survey they tried to make the partition as nearly equal as they could.

"That it was agreed and understood between the plaintiff and the defendant that if one purpart should contain more acres than the other, the one who would take the purpart containing the greatest number of acres should pay the other for the excess, at the average price per acre that the land cost them.

" That, after the survey was made, it was agreed that the party who would take the purpart without the buildings was to have half of all the crops that grew on the place, including hay and straw; and that it was agreed about the timber, and the privilege of staying, and the other privileges, as set forth in the agreement dated October 30, A. D. 1883, between the parties to this suit, except the right of laying pipes; that it was agreed between them that the land should be divided according to the survey.

" That, after the dividing of the land, they agreed that each one should make a valuation of the buildings, as all the buildings were on the eastern purpart and none on the western; that, if they could not agree, they would " try to come together " without regard as to who would take the eastern or western part of the farm; that the eastern purpart should be worth the price of the buildings more than the western purpart, and that the land was valued by them at an equal value in the two purparts not including the valuation of the buildings; that, several days afterwards, the plaintiff and the defendant met, and defendant asked plaintiff whether he had his paper with the valuation on, and he said, 'Yes'; that the plaintiff got his paper out, and they compared valuations and found that they corresponded exactly, each one having valued all the buildings at $1,300.

" That the plaintiff then said, ' We are alike, we have nothing to decide;' whereupon the defendant replied, 'Yes, but I will not take the old place,' meaning the eastern purpart with

the buildings; to wnich the plaintiff replied, 'Then I suppose
I will have to take it;' That, soon thereafter, the defendant
sent word to the plaintiff to come over; that he came over and
they began talking about this division; that plaintiff said to
the defendant that since they had valued the buildings at $1,300
and the defendant did not want the purpart with the buildings
on, he, the plaintiff, supposed he would have to take it and pay
to the defendant the $1,300; that they then put these facts
down upon a piece of paper, and on the same day drove down
to Francis Moyer, Esq., and had the agreement dated October
30, 1883, drawn, in which there is a mistake, as it should have
provided for the payment of half of $1,300, instead of the
$1,300, to the defendant.

"That, on the same day, the plaintiff paid to the defendant
the sum of $250, and was asked to give a note for the balance;
that on the following evening the defendant came to the plaint-
iff with a note for the balance $1,050, drawn up ready to sign,
which the plaintiff signed and has since paid.

"That the plaintiff, as he was the owner of the undivided
half interest in the farm and improvements, should have paid
only one half of the value of the buildings, in making a parti-
tion, and not the full value, to the defendant; which mistake
the plaintiff did not discover until sometime after all this money
with interest had been paid.

"That sometime after the plaintiff discovered his mistake,
he had a talk about this matter with the defendant, and said
to him, 'Let us figure over it;' that plaintiff told the defend-
ant that they had agreed upon a division of the land and a
valuation of the buildings, to which defendant replied, 'Yes;'
that plaintiff told the defendant that one half of the buildings
belonged to him, and if there was no mistake they must have
valued the buildings at $2,600 instead of $1,300, to which the
defendant replied, 'No, we did not value them at $2,600, we
only valued them at $1,300, as the full value;' that plaintiff
then told the defendant that he should not have paid him
$1,300, but that he should have paid him only one half of
$1,300, to which the defendant replied that 'he had never fig-
ured over it.' This conversation was in the presence of plaint-
iff's wife, who said to the defendant, 'You are figuring over it
now, and you can see that there is a big mistake,' to which the

defendant replied, 'Yes;' that the plaintiff then said to the defendant that they had done all this to save expenses, to which the defendant replied, 'Yes.'

"That the plaintiff would not have executed the written agreement, had he known at the time that, after an equal partition was made of the real estate and the valuation of the buildings as agreed upon, the defendant would only be entitled to $650 instead of $1,300.

"We propose to follow this up by other evidence that since this mistake has been discovered, the defendant has said to different parties that the land was divided and the buildings valued as stated in the offer, and that if it had been the other way and defendant had been beaten, he (the defendant) would never have said anything about it, and if defendant had paid the money to plaintiff, he (the plaintiff) would not have paid it back either. This is for the purpose of showing the admission by the defendant of a mistake in the agreement, and that the same was mutual."

To this offer the defendant objected: 1. To all evidence proposed by the offer, as to what occurred between the parties prior to the signing of the agreement. 2. Also, to all evidence of valuations and conversations between the parties before the signing of the contract. 3. To any parol evidence to change, alter or amend the written contract offered in evidence by the plaintiff. 4. To all subsequent conversations between the parties themselves, after the signing and execution of the contract; and to all declarations alleged to have been made by defendant after the signing and execution of said contract. 5. The witness on the stand having stated that the consideration of $1,300, was fully paid by him to Horn in the fall of 1884, and that the contract was fully executed between them, and in pursuance thereof a deed was made by plaintiff to defendant for the portion allotted to him, all of which were voluntary acts on the part of the plaintiff, he is estopped by his own acts and cannot reform the contract and deed. 6. It is incompetent for the plaintiff to offer any testimony on his alleged mistake, inasmuch as it appears from his offer that he signed and executed the contract and deed voluntarily, and without any duress, constraint, or fraud. 7. The whole offer of the plaintiff is objected to as incompetent, and immaterial.

Charge of Court below.

By the court : Offer admitted; exception.[1]

The plaintiff testified at length in support of the offer. He was corroborated by the testimony of his wife as to a conversation between the plaintiff and defendant, in her presence, sometime in the spring of 1888, soon after the plaintiff, as was alleged, first discovered the mistake ; and somewhat by the testimony of other witnesses as to admissions and declarations made by the defendant. Francis Moyer, the surveyor and scrivener, testified, as to the survey for the division of the land, that the two pieces were to be as nearly equal as he could make them, and that it was the purpose, the one to take one piece, and the other the other piece; that when the parties came to him they had agreed upon the terms, and had appraised the buildings on the eastern purpart at $1,300, which he called the "rausgeldt" or boot-money. The defendant testified that there was no mistake in the matter of the $1,300, the appraised value of the farm buildings ; that the division of the land was not made to equalize the value of the respective portions, and that the $1,300 was the " over-money " agreed upon as the difference between the values of the two purparts, with the buildings on the plaintiff's tract. The written agreement, under seal, between the plaintiff and defendant, dated October 30, 1883, was put in evidence, showing, inter alia, that the plaintiff agreed to retain and keep the eastern purpart with the farm buildings thereon, and the defendant the western purpart, with certain growing and cut timber on the eastern part, and certain privileges of egress and ingress for the purpose of ditching and laying pipes, etc., etc.; "the said William H. Reed further agrees to pay unto the said Josiah F. Horn the sum of thirteen hundred dollars, lawful money, etc., as follows: two hundred and fifty dollars down and the balance or remaining ten hundred and fifty dollars, at or upon the first day of April 1884." It was further shown that the $250 dollars hand money was paid, that the plaintiff and defendant exchanged deeds for their respective portions on December 8, 1883, and that afterwards the note given for $1,050 was paid off and discharged.

At the close of the testimony, the court, Dreher, P. J., charged the jury :

The principal item of claim on the part of the plaintiff in

· Charge of Court below.

this case is that for $650, which he alleges he paid to this defendant under a mutual mistake between them in relation to the division of their property.

As you have heard from the evidence, these two parties in 1883 were the joint owners, or tenants in common, of a farm in Packer township, containing something over 260 acres. They also owned, as joint owners, the stock upon that farm, farming utensils, crops they had raised. In the month of October, 1883, they determined between themselves to divide this farm; and, as they have both' said, sent for a surveyor, with the view of having a division line run so as to equally divide it in quantity; that is, that each part after being divided should, as near as possible, contain the same number of acres. The surveyor came and ran the line. These parties made a division of the farming utensils and the stock and some of the crops, perhaps all of them; indeed everything, all, as I understand it, of the personal property that they owned. Having done that, they went to the scrivener, Squire Moyer, who was also the surveyor, and on the thirtieth day of 'October, 1883, had him reduce to writing their final contract or agreement. · By that written contract the line of division was fixed. There are some stipulations as to the quantity [of timber] that the one holding the west half was to have off' the piece called the east half. So, in relation to the laying of pipe for taking water on the western part. I believe I am correct in that division. And in that agreement it is stipulated that Reed should pay to Horn $1,300.

Now, that written agreement is plain upon its face, easily read and easily understood. There is no ambiguity about it. And this plaintiff now claims that the stipulation contained in that contract, that he was to pay $1,300 difference, was a mistake; a mistake on his part, and, he alleges, also on the part of Horn. I have said to you that this written agreement is plain in its terms and easily understood. The presumption is that when parties have been in negotiation and finally reduce to writing their contract, all their prior negotiations are merged in that contract. [And where the paper is plain, unambiguous, the party alleging mistake must show, by clear, certain, unambiguous evidence, that the mistake was made.] [5] If this were not the rule of law, there would be but little use in reducing contracts to writing.

Charge of Court below.

The plaintiff alleges that his mistake grew out of the fact that he and, as he alleges, Horn, took the whole value of the buildings upon that property, agreed to their valuation, as the amount which he was to pay Horn, when, in point of fact, they were both mistaken, and that all he should have paid was $650, the one half of the value of the buildings. The plaintiff's allegation, as you know, is that they had divided the land, and by the terms of their agreement had equalized the value of the two properties, without regard to the buildings, between themselves, and the only thing left after that was to value the buildings; and that the amount at which they should fix the valuation of the buildings, should be added to the eastern part, or old place, and that should be worth that much more than the other. Now, if such was the understanding between both these parties, and they had divided everything except the buildings, equally according to their own arrangement and understanding, and they then simply valued the buildings on the old place; or, if they intended to make an equal division of the properties, of course there would be to pay, by the party accepting the part where the old buildings were, simply the one half of the valuation of it.

[Now, was there a mistake when they entered into this written agreement based upon a mutual mistake between these parties? Because, they must both have been mistaken before this plaintiff can recover. My recollection is, that the plaintiff says that when the two parties met the next day, or within a few days after they had fixed the value on the buildings, Horn said to him he wouldn't take the new place but he would take it if the defendant took the old place; that Horn would take the new place if he, Reed, would take the old place and pay Horn $1,300. Horn says that the $1,300, was to be the difference between the two places; that he was to receive the $1,300. Whatever may have been the conversations between these parties, prior to the time when they came to a final agreement when it was agreed which should take the old place and which the western place, were merged in this final arrangement they made. So that your attention must be directed to what these parties did agree to, when Reed agreed to take the old place and Horn the new one. Were they then both of the mind, that the party who took the old place was to take the buildings, and

Charge of Court below.

that the buildings were to be valued simply at $1,300, as the property of the two owners? If they were both of that mind at the time, then there was a mistake made, because each owned one half of these buildings. If, on the other hand, the agreement and understanding was that Reed was to pay $1,300, as the difference between these two properties, and there was no mistake on the part of both, then the plaintiff cannot recover. What did Reed understand, and what did Horn understand as to their respective rights? Did they enter into the valuation of these old buildings, with the view to determine what they were worth, and that the difference should be paid by the one who took the old place,—the difference in value of the places after adding the value of the buildings to it,—while they fixed no value on the farms, but meaning that the old place should be worth as much more than the new place as the buildings were valued by them? If they intended that, and that was the basis of their contract, then clearly there was a mistake when Reed paid the $1,300. Horn says there was no mistake on his part, and that he was to receive the $1,300.] [4] . . . . .

I do not know, gentlemen of the jury, that it is necessary for me to say anything further than to answer the points that have been presented.

The plaintiff Reed, by his counsel, has asked us to charge you:

1. That, if the jury find from all the evidence in the case that the land and farming stock were divided between the plaintiff and the defendant; and that they agreed to put a valuation upon the buildings, and that what the buildings were worth the old place would be worth that much more than the new place; and that Reed then paid to Horn the full valuation of the buildings, to wit: $1,300, when he should have only paid half of that amount; and if the jury further find that there was a mistake made in said payment, to wit, $1,300, and that such mistake was mutual between the parties, then Reed, the plaintiff, is entitled to recover $650, with interest from the time he paid Horn the last money.

Answer: That proposition I affirm.

2. If the jury find from the evidence in the case, that the plaintiff paid to the defendant one half of $1,300, in a mistake,

### Charge of Court below.

and that the mistake was mutual between the parties, then all the testimony bearing upon the question of the value of the land owned by either of the parties would have no bearing upon the issue trying, and the jury should disregard it.

Answer: That I also affirm.

Defendant has presented to us several points in which we are asked to charge you:

1. The uncontradicted evidence in this case being that the plaintiff paid the defendant the $650 for which this suit is brought, voluntarily and without any constraint, duress or coercion, he cannot recover it back in this action.

Answer: Negatived.

2. The uncontradicted evidence in this case being that the plaintiff paid the defendant the $650 for which this suit is brought, voluntarily and without any constraint, duress, coercion or fraud, and that the defendant consistently with conscience received it, the plaintiff cannot recover it back in this case.

Answer: Negatived.

3. If the jury find that the plaintiff paid the defendant the $650 for which this suit is brought, voluntarily and without any constraint, duress, coercion or fraud, in pursuance of the contract between them in evidence, and with full knowledge of the facts and circumstances of the subject matter of the contract, the plaintiff cannot recover it back in this case.

Answer: Affirmed.

4. If the jury find that the plaintiff paid the defendant the $650 for which this suit is brought, voluntarily and without any constraint, duress or fraud, and in pursuance of the contract between them, and that the terms of said contract were fully carried out, and that deeds passed between the parties for their respective portions of the farm, and that the plaintiff acquiesced in said executed contract and deeds of division for a period of three years and upwards, the plaintiff cannot recover it back in this case.

Answer: Negatived.[2]

5. The evidence of the plaintiff discloses no mistake of fact between the parties, but simply a mistake in calculations on his part, and that he paid the $650 voluntarily, without constraint or fraud. The plaintiff therefore cannot recover back the money in this suit.

Answer : Negatived.

6. Before the executed contract in this case can be reformed, changed or altered by parol testimony, the plaintiff must satisfy the court by evidence that is clear, precise and indubitable that there was a mutual mistake at the time of the making of the contract.

Answer: Affirmed.

7. Under all the evidence in the case, there can be no recovery of the $650 claimed by the plaintiff.

Answer: Negatived.[3]

[As I have said to you, the burden rests upon the plaintiff to satisfy you by clear, precise and indubitable evidence that there was a mistake when that contract was made, by which the plaintiff agreed to pay $1,300, and that that mistake was a mutual one, a mistake on the part of both parties. ][5] If that is proven, by the kind of evidence that I have already said to you is necessary for the plaintiff to produce, then the plaintiff would be entitled to the amount of $650, with interest. If the evidence fails to satisfy you beyond any doubt that there was this mistake, then you should not allow the plaintiff for the $650. '

—The jury returned a verdict in favor of the plaintiff for $650, without interest. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal and assigned for error :

1. The admission of the plaintiff's offer.[1]

2, 3. The answers to the defendant's points.[2] [3]

4, 5. The portions of the charge embraced in [ ] [4] [5]

*Mr. Allen Craig* (with him *Mr. James S. Loose* and *Mr. T. A. Snyder*), for the appellant :

1. Was the evidence on the part of the plaintiff sufficient to warrant the altering and reforming of the written contract? The only persons present, previous to and at the time of signing the contract, were the plaintiff, the defendant, and Francis Moyer. The plaintiff's allegation of mistake is distinctly and positively denied by the defendant and by Francis Moyer. The defendant testifies the $1,300 was " over-money " or boot-money ; Moyer, that it was boot-money. The plaintiff is contradicted, further, by his payment of the $1,300 about April 1, 1884, by

Arguments.

making his deed for the land in December, 1883, and by remaining content with the transaction until 1889, when he brought suit. The plaintiff and wife are to be counted as one witness: Sower v. Weaver, 78 Pa. 443; * moreover, the wife's testimony alleges loose parol declarations made in conversations between the plaintiff and defendant long after the written contract, in the spring of 1888. These are not sufficient: Fisher v. Witham, 132 Pa. 488; Stine v. Sherk, 1 W. & S. 202; Nicolls v. McDonald, 101 Pa. 519.

2. The court below should have taken the case from the jury. "Now that parties are competent witnesses, and each may oppose his oath to that of the other, when written contracts or obligations are sought to be impeached by defences purely equitable the reason is stronger than ever for enforcing the rules of equity applicable to such cases:" Sylvius v. Kosek, 117 Pa. 76. To the same purport are North v. Williams, 120 Pa. 109; English's App., 119 Pa. 533; Thomas v. Loose, 114 Pa. 35; Jackson v. Payne, 114 Pa. 67; Jones v. Backus, 114 Pa. 120; Knarr v. Elgren, 19 W. N. 531; Nicolls v. McDonald, 101 Pa. 514; Shettiger v. Hopple, 3 Gr. 54; Rowand v. Finney, 96 Pa. 192. The proof is required to be "clear, precise, and indubitable;" or, "clear, explicit, and unequivocal:" Fisher v. Witham, supra; Spencer v. Colt, 89 Pa. 319; Ott v. Oyer, 106 Pa. 17; Saunders v. Gould, 134 Pa. 445. And if, under pretence of reforming an instrument, loose parol declarations were received to substitute another contract in lieu of it, rights of property would rest on a frail and precarious foundation: Stine v. Sherk, 1 W. & S. 202; Murray v. Railroad Co., 103 Pa. 44. Moreover, a party must be held to a reasonable degree of diligence: Story's Eq. J., § 146; Bispham's Eq., § 191; Susquehanna Ins. Co. v. Swank, 102 Pa. 23.

3. The court did not sufficiently and adequately explain and define to the jury the character and measure of parol testimony which the law requires to reform a written instrument. In the use of the phrases "clear, certain, unambiguous evidence," and "clear, precise, and indubitable evidence," the court below was bound, in the immediate connection of their use, to give an explanation and definition of these phrases, as

---

* But see Yost v. Mensch, 141 Pa. 73, 84.

applicable to the measure of parol testimony; "that is to say, if the case is submitted to the jury, the evidence must carry clear conviction to the minds of the jurors that the witnesses are credible; that the facts are distinctly remembered, and are truly and accurately stated; and, to the mind of the court, that if the facts alleged are true the matters in issue are definitively and distinctly established:" Mr. Justice CLARK, in Saunders v. Gould, 134 Pa., p. 457; and see: School Fur. Co. v. School D., 130 Pa. 94; Ferguson v. Rafferty, 128 Pa. 356; Thomas v. Loose, 114 Pa. 45; Cullmans v. Lindsay, 114 Pa. 170; Ott v. Oyer, 106 Pa. 17; Spencer v. Colt, 89 Pa. 319; Frey v. Heydt, 116 Pa. 601. A judge is not warranted in submitting the reformation of a contract to a jury, unless, under the evidence if believed by him, he would as a chancellor reform the contract.

*Mr. William G. Freeman* (with him *Mr. Horace Heydt* and *Mr. R. H. Koch*), for the appellee:

1. Will "rausgeldt," or boot-money help the defendant? The parties owned the land as tenants in common, and if they imagined they were trading farms, and that the one which the plaintiff was to take was worth $1,300 more than the one the defendant was getting, and the plaintiff paid the defendant that sum, there would be this same mistake. The written agreement did not have to be reformed in any particular, outside the consideration of $1,300 therein named. "Nothing is better settled than that the consideration of an agreement may be proved aliunde, by parol if necessary, and even shown to be different from that expressed:" Holmes's App., 79 Pa. 289. And that parol proof may be admitted to reform a writing on account of fraud, accident, or mistake, is conceded by the defendant, and sustained by numerous decisions: Fisher v. Deibert, 54 Pa. 460; Barnhart v. Riddle, 29 Pa. 96; Chalfant v. Williams, 35 Pa. 215; Eilenberger v. Insurance Co., 89 Pa. 464; Martin v. Berens, 67 Pa. 463. And money paid in mutual mistake may be recovered back: Morris v. Tarin, 1 Dall. 147; Ege v. Koontz, 3 Pa. 109; Mays v. Dwight, 82 Pa. 462; Hoover v. Senseman, 3 Cent. R. 540.

2. There is no authority in support of the position that, in connection with the use of the phrases, "clear, certain, and

unambiguous," "clear, precise, and indubitable," the courts are required to explain and define them, as applicable to the measure of parol testimony. And the defendant, in his sixth point which was affirmed, requested the court to charge the jury in these precise phrases. If the defendant thought that neither the jury nor the lawyers would understand these terms, why not define them in his point and ask for more specific instructions? Spencer v. Colt, 89 Pa. 319, clearly rules that the trial judge is not required to define those terms: "The word 'indubitable,' the application of which . . . . . has been made the ground of such urgent complaint, was used in a sense subject to these limitations, and would necessarily so be understood; absolute certainty is of course out of the question." Finally; the assertion that the only contemporaneous witnesses to the agreement were the defendant and Moyer, sustaining the contract, and the plaintiff attacking it, entirely ignores the fact that the actual agreement preceded the writing of the contract, and that the parties came with it prepared to the scrivener who put it into writing.

OPINION, MR. JUSTICE STERRETT:

This action was brought mainly to recover six hundred and fifty dollars, paid by plaintiff to defendant in consequence of an alleged mutual mistake in carrying into effect an amicable partition of real estate held by them as tenants in common. While several other inquiries of minor importance are suggested by the specifications of error, the controlling question is whether the evidence was such as to justify the court in submitting, as it did, the question of mutual mistake to the jury.

The facts and circumstances pertaining to the contention, all of which are fully presented in the record, may be epitomized thus:

After jointly stocking and farming, for several years, a tract of about two hundred and sixty acres held by them in common, the plaintiff and defendant concluded to make, as nearly as possible, an equal division of their joint real and personal property. They first divided their farming implements, live stock, and all other personal property, each taking by agreement a moiety thereof in value. With the aid of a surveyor, they then

Opinion of the Court.

agreed upon a line dividing the land, as they intended, into two purparts containing each about the same number of acres, and estimated by them at the same value per acre, exclusive of the buildings, all of which were on the eastern purpart. With the view, as the jury found, of compensating the one to whom the western purpart might be allotted, for his interest in the buildings on the eastern purpart, they undertook to determine their value; and, after each marking on paper the sum he considered them worth, they compared notes and afterwards agreed upon one thousand three hundred dollars as the fair value of the buildings. Having thus settled the location of the division line, the value of the buildings, and arranged minor matters, as to timber leave, etc., it was finally agreed that plaintiff should take, in severalty, the purpart on which the improvements were, and defendant should take the other. They then went to a justice of the peace, and executed the agreement which was given in evidence. Instead of evidencing a purpose to make an equal division of the land, both as to quality and value, coupled with compensation in money to the defendant, for his interest in the building on the purpart allotted to plaintiff, the agreement provides that the latter shall pay for the former one thousand three hundred dollars; and the money was afterwards paid. It then occurred to the plaintiff that in carrying out the purpose they had in view, throughout their negotiations and in everything that was done in dividing the land and appraising the buildings, a mutual mistake had occurred, whereby he had paid to his brother-in-law six hundred and fifty dollars more than he should have paid according to the basis on which the partition was actually made, or rather intended to be made. Failing to convince the defendant that equality of partition as to quantity and value of the land, irrespective of buildings, coupled with compensation in money for his interest in those improvements, did not mean that he was entitled to a full half of the land, in quantity and value, and the whole valuation money of the buildings besides, instead of one half thereof, the plaintiff brought this suit to recover the six hundred and fifty dollars which he alleges was erroneously paid by mutual mistake.

The action, of course proceeds upon that assumption, and on the equitable doctrine that relief will generally be granted

in such cases when the fact of mutual mistake is established
by clear, precise, and indubitable evidence.   The learned judge
who presided and exercised the function of a chancellor in
this case was doubtless satisfied that the evidence adduced by
the plaintiff was of that character.   He accordingly submitted
the testimony to the jury in a clear and comprehensive charge,
in which they were accurately and adequately instructed as to
their duties, and as to the kind and degree of evidence that
was required to prove the alleged mutual mistake and justify a
verdict in favor of the plaintiff.   The verdict establishes the
plaintiff's version of the controlling facts.   A careful examina-
tion of the evidence satisfies us that the case was rightly sub-
mitted to the jury, and that their verdict was fully warranted.
No chancellor with the case before him, on a bill to reform the
clause in the written agreement requiring the payment of one
thousand three hundred dollars, instead of six hundred and
fifty dollars, by plaintiff to defendant, would upon such evi-
dence hesitate to make a decree reforming the instrument.
That, we take it, is the true test of the plaintiff's right to re-
cover.   Nothing that appears to have occurred since the mak-
ing of the agreement, can be successfully urged as ground of
estoppel.

Plaintiff's general offer of proof, and the objections thereto
are recited, in extenso, in the first specification.   An examina-
tion of these has failed to disclose any error in admitting the
evidence.   It was both competent and relevant.

There was no error in refusing to affirm defendant's fourth
and seventh points.   The former ignores the main ground on
which plaintiff's right of recovery was based; and the latter
underestimates the quality, quantity, and strength of the proof
in support of plaintiff's claim.   In affirming defendant's third
point, the court instructed the jury that if they found "the
plaintiff paid the defendant the $650 for which this suit was
brought, voluntarily and without any constraint, duress, coercion
or fraud, in pursuance of the contract between them in evi-
dence, and with full knowledge of the facts and circumstances
of the subject matter of the contract, the plaintiff cannot re-
cover it back in this case."   This was quite as favorable to the
defendant as he was entitled to.

The fourth and fifth specifications allege error in portions of

the charge recited therein. These excerpts from the charge, as well as the entire charge, are self-sustaining, and require no vindication at our hands. There is no merit in the complaint that the learned judge did not explain what is meant by the words " clear, precise, and indubitable," as applied to the evidence. If defendant desired any explanation of these words, he should have requested it in his sixth point, wherein he employs the same words for the same purpose. He doubtless regarded that point as sufficiently plain for the jury to understand, and it was affirmed in his own words, viz.: " Before the executed contract, in this case, can be reformed, changed, or altered by parol testimony, the plaintiff must satisfy the court, by evidence that is clear, precise, and indubitable, that there was a mutual mistake at the time of making the contract." The plaintiff did thus satisfy the court, as well as the jury, that there was a mutual mistake, as alleged by him, and that under it the money in controversy was paid. The evidence of that fact was, in all respects, quite sufficient.

The case was well and correctly tried. The defendant's only trouble is that the evidence was overwhelmingly strong in favor of the plaintiff's contention, and against the " rausgeldt or boot-money " theory of the other side.

Judgment affirmed.